UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| WILLIAM W. YORK, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> TENNESSEE BOARD OF ) <br> PROBATION AND PAROLE, et al., ) <br> ) <br> Defendants. ) | Case No. 3:08-cv-1093 <br> Judge Campbell / Knowles |

## REPORT AND RECOMMENDATION

### I. Introduction and Background

This matter is before the Court upon Defendants' Motion for Summary Judgment. Docket No. 29. Along with that Motion, Defendants have contemporaneously filed a supporting Memorandum of Law (Docket No. 30), a Statement of Undisputed Material Facts (Docket No. 31), and the Affidavit of Defendant Charles Traughber with attachments (Docket No. 32, 32-1).

Although Plaintiff filed a "Motion to Continue Hearing on Summary Judgment Motion and Extending the time for Response Thereto" (Docket No. 33), which was granted by the undersigned in an Order entered February 8, 2010 (Docket No. 34), and which extended Plaintiff's time to file a Response to April 9, 2010 (*Id.*), Plaintiff has not responded to Defendants' Motion.

Plaintiff filed this pro se, 42 U.S.C. § 1983 action, alleging that, "In denying [him] parole on January 7, 2008, the Tennessee Board of Probation and Parole retroactively used current parole laws, policies, and practices that were different from those in effect when [he] committed

1

his crimes in June 1977; and the effect of these changes, individually and cumulatively, created a harsher substantive standard for parole creating a sufficient risk of increased punishment to violate the *Ex Post Facto Clause* of the United States Constitution, Article I Section 10." Docket No. 1. Plaintiff sues the Tennessee Board of Probation and Parole, including Chairman Charles Traughber and Members Yusef Hakeem, Patsy Bruce, Larry Hassell, James Austin, and Ronnie Cole, each in their official capacity. *Id.* Plaintiff seeks declaratory relief. *Id.*

Defendants filed the pending Motion and supporting materials on January 19, 2010. Docket Nos. 29- 31-1. Defendants argue that the parole provisions that were applied in Plaintiff's January 2008 parole release hearing did not violate the Ex Post Facto Clause because their applications did not create a "sufficient risk of increasing the measure of punishment attached to the crime," as required by the Sixth Circuit in *Dyer v. Bowlen*, 465 F.3d 280, 285 (6th Cir. 2006). *Id.* Defendants also argue that Plaintiff has failed to "offer actual evidence" that the "retroactive application will result in a longer period of incarceration" for him. *Id.* Defendants further argue that the undisputed facts establish that the application of the 2008 parole provisions to Plaintiff did not increase his risk of parole release denial and that Plaintiff cannot sustain his claim. *Id.*

For the reasons set forth below, the undersigned concludes that, viewing all the facts and inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and Defendants are entitled to a judgment as a matter of law. The undersigned therefore recommends that Defendants' Motion for Summary Judgment be GRANTED.

## II. Undisputed Facts[1]

On May 30, 1977, Plaintiff and two co-defendants robbed the Hawkins Jewelry Store in Madison, West Virginia. *State v. Caudill*, 289 S.E.2d 748, 750 (W. VA. 1982). The owners of the store, Aubrey and Alberta Hawkins, were held at gunpoint during the robbery and then forced into the waiting getaway car. *Id.* The Hawkins were thereafter placed into the trunk of the car and held captive. *Id.* They were found dead on June 3, 1977, near Jellico, Tennessee. *Id.* Plaintiff was convicted of two counts of first degree murder and received two concurrent life sentences in Tennessee. *Id.*

Plaintiff avers in his Complaint that, on January 7, 2008, he became eligible for parole consideration and the Tennessee Board of Pardons and Paroles conducted a parole hearing. Docket No. 1, p. 2. He was denied parole, and he avers that "the only reason provided by the Board for denying parole was 'Seriousness of the Offense.'" *Id.*

Defendant Charles Traughber is a charter member of the Board, appointed by Governor Winfield Dunn in 1972. Traughber Aff., ¶ 2. He was appointed Chairman of the Board in July 1972 and served as such until June 1976. *Id.* From July 1976 through July 1977, he served as a member of the Board. *Id.* He was reappointed Chairman and served in said capacity through June 1979. *Id.* From July 1979 to December 1985, he served as a member of the Board. *Id.* He was re-appointed Chairman on January 1988. *Id.* He has served as Chairman of the Board from 1988 to the present. *Id.* In July 1999, the Board became the Board of Probation and Parole. *Id.*

Defendant Traughber has been the Chairman or a member of the Board for the past

---

[1]Unless otherwise noted, the following facts are in a form required by Fed. R. Civ. P. 56 and are undisputed.

thirty-six years. *Id.* As such, Defendant Traughber has personal knowledge of the following. *Id.* Plaintiff had no greater likelihood of release on parole under the statutes, rules, regulations, and policies in effect in June 1977 (the date of his commission of two first degree murders) than under the statutes, rules, regulations, and policies in effect in January 2008 (the date of Plaintiff's parole hearing at issue). *Id., ¶* 3.

In June 1977, parole release was at the Board's discretion, and the Board could deny parole on grounds that release would depreciate the seriousness of the crime or promote disrespect for the law. *Id.*, ¶ 4. The Rules and Regulations of the Board, § 0420-1-1-.09, Criteria for Granting or Denying Parole (effective May 1, 1976 (revised)) provide in pertinent part:

> (b) Although eligibility for parole is set by statutes, the actual release decision is discretionary with the Board . . .
> . . .
> (d) The Board must also weigh and consider the type of crime(s) committed, past and present, to gauge the probable impact of repeated criminal behavior; for example, the danger of a forger repeating his offense, through more probable than the rapist or murderer repeating his crime, is certainly less serious.
> . . .
> (h) 1. All eligible offenders will be released on parole when he or she is first eligible unless the Board, by majority vote, decides that one of more of the following four conditions exists:
> . . .
>> (ii) His/her release at that time would depreciate the seriousness of the crime or promote disrespect for the law.

*Id.*

In June 1977, the Board interpreted and applied the Board's Rules and Regulations § 0420-1-1-.09(1)(h)(1) such that, if any one or more of the four criteria applied to the inmate, the inmate was not granted release on parole. *Id.*

4

In June 1977, Tenn. Code Ann. § 40-3613 provided the Board with the authority to parole at its discretion persons convicted and sentenced to life imprisonment. *Id.*, ¶ 5. The statute stated in pertinent part:

> [A]ny person who shall have been convicted and sentenced to a term of imprisonment in the state penitentiary for a period or term of sixty-five (65) years or more, or life, may become eligible for parole . . . The granting of such parole shall be within the discretion of the board of pardons and paroles.

*Id.*

In June 1977, Tenn. Code Ann. § 40-3614 provided the Board with the authority to parole at its discretion. *Id.*, ¶ 6. The statute stated in pertinent part:

> Parole being a privilege and not a right no prisoner shall be released on parole merely as a reward for good conduct or efficient performance of duties assigned in prison, but only if the board is of opinion that there is reasonable probability that if such prisoner is released he will live and remain at liberty without violating the law, and that his release is not incompatible with the welfare of society. If the board shall so determine, such prisoner shall be allowed to go upon parole outside of prison walls . . . .

*Id.*

The Board interpreted the statutory language, "if the board shall so determine, such prisoner shall be allowed to go upon parole outside of prison walls," to mean that, if the Board, in its discretion, decided that a released inmate would not violate the law and that his release was not incompatible with society's welfare, then it would grant the inmate release on parole. *Id.* The Board applied the statute in said manner in its parole hearings. *Id.* The Board considered the depreciation of the seriousness of the offense as incompatible with the welfare of society. *Id.*

Changing the Board from a division of the Department of Correction to a separate agency

5

in 1979 had no effect on the Board's substantive parole release decision-making. *Id.*, ¶ 7. Minimizing public risk was as much a Board concern in June 1977 as it was in January 2008. *Id.*, ¶ 16. In June 1977, as in January 1998, criminal victims could attend and address parole hearings. *Id.*, ¶ 8. Tennessee Constitution Article I § 35, which was enacted in 1998, and which pertains to rights of crime victims, has not increased the Board's consideration of criminal victim's statements. *Id.*

An inmate's good institutional conduct was given the same amount of consideration in the Board's parole release decision-making in June 1977 as in January 2008. *Id.*, ¶ 11. Also in January 2008, as in June 1977, the Board had the discretion to advise inmates of programs to take to support their parole release requests. *Id.*, ¶ 12. Completing said programs did not remove the Board's parole release discretion in June 1977 or January 2008. *Id.*

In June 1977, the Board's Rules and Regulations did not set yearly parole review hearings. *Id.*, ¶ 15.

In June 1977, as in January 2008, the Board considered the nature of the crime and its severity, any mitigating or aggravating circumstances surrounding the offense and the view of the community, victims, victims' families, institutional staff, parole officers and other interested parties. *Id.*, ¶ 14. In June 1977, comparable factors were set forth in the Board's Rules and Regulations § 0420-1-1-.08(2)(e) and (3)(a) and § 0420-1-1-.09(1)(d)&(g) and (h)(1)(ii). *Id.* As in June 1977, the six factors listed in Plaintiff's Complaint at ¶ 19 (inmates physical and mental health; personality characteristics, including maturity level, stability, and ability to undertake responsibility; conduct in the institution, including whether advantage has been taken of the opportunities for self-improvement participation in programs; family status and relationships

6

with interested relatives or other constructive associations in the community; attitude towards laws, authority, and parole rules; and adequacy of parole plans or prospects upon release) were considered by the Board in Plaintiff's January 2008 hearing. *Id.*, ¶ 13. In June 1977, as in January 2008, the Board felt that, "release not incompatible with the welfare of society," "minimizing public risk," and "the seriousness of the offense," encompassed the same issue. *Id.*, ¶ 16.

In June 1977, Tenn Code Ann. § 40-3601 required a majority of the three board members to affirm release on parole. *Id.*, ¶ 9. In January 2008, Tenn. Code Ann. § 40-28-105(d)(4) required the majority of the seven member board to affirm release on parole for first degree murder. *Id.* An "objective advisory parole prediction guideline system" in effect in June 1977 would not have increased the likelihood of parole release of a person convicted of two first degree murders, such as Plaintiff. *Id.*, ¶ 14. It was as difficult in June 1977 to obtain majority approval for parole release with two first degree murder convictions as in January 2008. *Id.*, ¶ 9.

At every parole release hearing, every board member voted against releasing Plaintiff on parole.[2] *Id.*, ¶ 10. Whether the rule was two out of three or four out of seven, Plaintiff would have been denied parole release, as the vote was unanimous. *Id.*

### III. Analysis

#### A. Local Rules 7.01(b) and 56.01(c) and (g)

Local Rule 7.01(b) states, in pertinent part:

---

[2] Plaintiff's sole claim in the case at bar concerns his parole hearing that occurred on January 7, 2008. Docket No. 1, p. 2-3, 22.

7

> Each party opposing a motion shall serve and file a response, memorandum, affidavits, and other responsive material not later than fourteen (14) days after service of the motion, except, that in cases of a motion for summary judgment, that time shall be twenty-one (21) days after the service of the motion, unless otherwise ordered by the Court. Failure to file a timely response shall indicate that there is no opposition to the motion.

Defendant filed the pending Motion on January 19, 2010. Docket No. 29. Plaintiff has failed to respond to Defendant's Motion.

Additionally, with respect to Motions for Summary Judgment specifically, Local Rules 56.01(c) and (g) state, in pertinent part:

> c. Any party opposing the motion for summary judgment must respond to each fact set forth by the movant ...
>
> . . . g. Failure to respond to a moving party's statement of material facts, or a non-moving party's statement of additional facts, within the time periods provided by these Rules shall indicate that the asserted facts are not disputed for the purposes of summary judgment.

Plaintiff has failed to respond to Defendant's Statement of Undisputed Material Facts. Pursuant to Local Rule 56.01(g), Plaintiff's failure to respond indicates "that the asserted facts are not disputed for the purposes of summary judgment." Accordingly, there are no genuine issues as to any material fact and all that remains to be determined is whether Defendant is entitled to a judgment as a matter of law.

## B.  Motion for Summary Judgment

It would be inappropriate to grant Defendants' Motion solely on the ground that Plaintiff has failed to respond. *See Stough v. Mayville Community Schools*, 138 F.3d 612, 614 (6th Cir. 1998). As the Sixth Circuit has stated:

> [A] district court cannot grant summary judgment in favor of the

8

> movant simply because the adverse party has not responded. The Court is required, at a minimum, to examine the movant's Motion for Summary Judgment to ensure that he has discharged [his initial] burden ... The federal rules require that the party filing a Motion for Summary Judgment "always bears the burden of demonstrating the absence of a genuine issue as to a material fact."

*Id.* (citations omitted). The Court will, therefore, consider whether Defendants have met their burdens under the appropriate summary judgment standards discussed below.

Under Fed. R. Civ. P. 56(c), summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." A dispute is "genuine" only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202 (1986).

In order to prevail on a Motion for summary judgment, the moving party must meet the burden of proving the absence of a genuine issue as to material fact concerning an essential element of the opposing party's claim. *Celotex v. Catrett*, 477 U.S. 317, 323, 106 S. Ct. 2548, 2553, 91 L. Ed. 2d 265 (1986); *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989). In determining whether the moving party has met its burden, the Court must view the evidence in the light most favorable to the nonmoving party. *Matsushita Electric Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S. Ct. 1348, 1356, 89 L. Ed. 2d 538 (1986).

Fed. R. Civ. P. 56 provides that the nonmoving party may not rest upon the mere allegations or denials of his or her pleading, but his or her response, by affidavits or otherwise, must set forth specific facts showing that there is a genuine issue for trial. If a nonmoving party, however, fails to make a showing sufficient to establish the existence of an element essential to

9

that party's case, and on which that party will bear the burden of proof at trial, there is no genuine issue as to any material fact because a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322-23, 106 S. Ct. at 2552, 91 L. Ed. 2d at 273. When this occurs, the moving party is entitled to summary judgment as a matter of law. *Id.* at 322-23, 106 S. Ct. at 2552; *Williams v. Ford Motor Co.,* 187 F.3d 533, 537-38 (6th Cir. 1999).

## C. 42 U.S.C. § 1983

Plaintiff's claims have been filed pursuant to 42 U.S.C. § 1983. *See* Docket No. 1. Plaintiff alleges violations of the Ex Post Facto Clause of Article I, § 10 of the United States Constitution, which provides, "No state shall . . . pass any . . . ex post facto law . . . ."

Section 1983 provides, in part, that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...

Thus, in order to state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988)*, citing Parratt v. Taylor,* 451 U.S. 527, 535 (1981) (overruled in part on other grounds, *Daniels v. Williams,* 474 U.S. 327, 330-331 (1986)); *Flagg Bros., Inc. v. Brooks,* 436 U.S. 149, 155 (1978). The traditional definition of acting under color of state law requires that the defendant in a § 1983 action have exercised power "possessed by virtue of state law and

10

made possible only because the wrongdoer is clothed with the authority of state law." *Id.* at 49, *quoting United States v. Classic,* 313 U.S. 299, 326 (1941).

**D.  The Case at Bar**

The Ex Post Facto Clause of Article I, § 10 of the United States Constitution prohibits the retroactive application of laws that alter the definition of crimes or increase the punishment for criminal acts. *California Dep't of Corrections v. Morales*, 514 U.S. 499, 505 (1995), *citing Collins v. Youngblood*, 497 U.S. 37, 43 [internal citations omitted].  As the Supreme Court has stated:

> [T]he focus of the ex post facto inquiry is not on whether a legislative change produces some ambiguous sort of "disadvantage," nor ... on whether an amendment affects a prisoner's "opportunity to take advantage of provisions for early release," ... but on whether any such change alters the definition of criminal conduct or increases the penalty by which a crime is punishable.

*Id.* at 506.  If the change effected does "not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt," no Ex Post Facto violation occurs.  *Weaver v. Graham*, 420 U.S. 24, 31, n. 12 (1981) (*quoting Hopt v. Utah*, 110 U.S. 574, 590 (1884)).

Moreover, the Clause does not require that a sentence be carried out under the identical legal regime that was in place at the time of the punishment's imposition.  *Morales,* 514 U.S. at 510.  The critical question for Ex Post Facto purposes is whether the new statutory provision imposes greater punishment after the commission of the offense, not merely whether it increases a criminal sentence.  *Weaver*, 420 U.S. at 32, n. 17.  When a change in the law "creates only the most speculative and attenuated possibility of producing the prohibited effect of increasing the

11

measure of punishment for covered crimes," it is insufficient to violate the Ex Post Facto Clause. *Morales*, 511 U.S. at 509.

It is undisputed that Plaintiff was convicted of two counts of first degree murder and received two concurrent life sentences. It is also undisputed that it was as difficult in June 1977 to obtain majority approval for parole release with two first degree murder convictions as in January 2008. It is further undisputed that at every parole release hearing, the Board voted unanimously to deny Plaintiff parole.

Plaintiff has failed to demonstrate that the 2008 parole laws, policies, or practices "alter[ed] the definition of criminal conduct or increase[d] the penalty by which a crime is punishable." *Morales*, 514 U.S. at 506. As has been discussed, if the changes effected do "not increase the punishment nor change the ingredients of the offense or the ultimate facts necessary to establish guilt," no Ex Post Facto violation occurs. *Weaver*, 420 U.S. at 31, n. 12.

Finally, Plaintiff's Complaint states that he seeks "declaratory relief under Article I, Section 10, of the United States Constitution as applied to the State of Tennessee through the Fourteenth Amendment to the United States Constitution . . . ." Docket No. 1, p. 1. The Ex Post Facto clause*,* by its terms, applies to the States. It is not "applied" through the Fourteenth Amendment.

It does not appear that Plaintiff has raised a Fourteenth Amendment due process claim in the case at bar. To the extent that he has attempted to do so, the Court notes that parole, as it exists in Tennessee, is "a privilege not a right." *See* Tenn. Code Ann. § 40-35-503(b). There is no duty to establish a parole system or provide for parole for all categories of convicted persons, and the presence of a parole system does not, in-and-of itself, give rise to a constitutionally

protected liberty interest in parole release. *See, e.g., Greenholtz v. Inmates of Nebraska Penal and Correctional Complex,* 442 U.S. 1, 7, 11 (1979).

As the Sixth Circuit has also stated, "Due process in parole proceedings is satisfied as long as the procedure used affords the inmate an opportunity to be heard, and, if parole is denied, the Parole Board informs the inmate of the basis upon which it denied parole." *Swihart v. Wilkinson,* 2006 WL 3368823 (6th Cir.) at **3, *citing Greenholtz, supra.* Plaintiff's Complaint establishes that he did have a parole hearing and that he was informed of the basis for the denial of his parole. Docket No. 1, p. 2.

Thus, even if Plaintiff has attempted to raise a Fourteenth Amendment due process claim, that claim is without merit.

## IV. Conclusion

For the foregoing reasons, the undersigned concludes that, after viewing all the facts and inferences in favor of the nonmoving party, there is no genuine issue as to any material fact and Defendants are entitled to judgment as a matter of law. The undersigned therefore recommends that Defendants' Motion for Summary Judgment be GRANTED.

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has fourteen (14) days after service of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have fourteen (14) days after service of any objections filed to this Report in which to file any response to said objections. Failure to file specific objections within fourteen (14) days of service of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *See Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L. Ed. 2d 435 (1985),

13

Case 3:08-cv-01093   Document 45   Filed 08/12/10   Page 13 of 14 PageID #: 215

*reh'g denied*, 474 U.S. 1111 (1986); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72.

                                                     _____
                                                     E. CLIFTON KNOWLES
                                                     United States Magistrate Judge

14